OPINION
PER CURIAM.
Kokou Amevava Awlime petitions for review of an order of the Board of Immigration Appeals (“BIA”), which dismissed his appeal from the removal order of an Immigration Judge (“IJ”). We will deny the petition for review.
Awlime is a native and citizen of Togo. He entered the United States in 2003 as a visitor for pleasure and remained longer than permitted. He was placed in removal proceedings and he applied for asylum and related relief. Awlime’s application was based on incidents in Togo related to his activities as a taxi driver (the transcripts sometimes say “chauffeur”) and union leader for fellow taxi drivers in Togo.
According to Awlime, the police in Togo would set up barricades, stop taxi drivers, and ask for the money that the drivers had made. Awlime wanted to stop this, so he organized the drivers in a demonstration. He did not recall the date of the demonstration. Sixty or seventy drivers took their cars to the barricades and began singing protest songs. The police asked who organized the demonstration. Awlime admitted that he had, and the police took him and two others to the police administration building. Awlime was the only one arrested and kept for three days. He was told that if he continued to protest, the police would “finish with my life.” He was not given food or water during the three days, and had to relieve himself in a pot and had to sleep on the ground. He was questioned on the first day, and on the third day, he was released. Police also impounded his car and made him pay to get it back.
In a second incident, on September 1, 2001, Awlime was driving his taxi near the border between Togo and Ghana. Two men stopped him and said they would like to rent his taxi. They pulled out pistols and told him to continue to drive to where the former president lived. They told him to turn around to the bush and they entered a yard with a small house. Gendarmes in civilian clothes made him get out and started kicking him and beating him with batons. He lost a tooth from the beating. They kept his car and never gave it back. The assailants put him in a jail for about a month. Blood was leaking from his mouth and his face was swollen. He could not eat for three days. They questioned him, but he could not say anything. He had to sleep on a wet floor. On one day, two men came and said they were going to give Awlime “morning coffee.” *294 They took him to a palm tree, gave him soap and water, and made him wash the tree until his hands were bleeding. They came again and told him they would give him “coffee.” This time, he had to get on his knees and walk back and forth on rocks on the ground for hours. A third time, they told him it was time for “coffee,” and they made him undress and kneel in a place where there were many mosquitos. He had to cross his arms and was not allowed to swat at the mosquitos. They then told him if he wanted to be released, he would have to spy for them. He agreed, and he was released about September 27, 2001.
Awlime stayed at home and did nothing after being released, and finally took his family to Benin. Awlime left for the United States about 19 months later. He did not want to leave for the United States sooner, because he did not want to leave his children, and he did not have enough money for the trip. He believed Benin was not safe for him, because the police from Togo can cross into Benin. Gnas-singbe Eyadema was the president in Togo when Awlime left; now his son is president. Awlime has been told that nothing has really changed.
On cross-examination, Awlime was asked whether the three “coffees” occurred on three different days, as he testified on direct, or on one day, as stated in his application. He first confirmed that it happened during three days, but when confronted with the application, replied that it was all in one day, and that any differences between his application and his testimony were due to his memory problems. Awlime also testified that he had been in counseling in the U.S. for the past eight months.
Awlime was then asked about pictures that he said were taken by a nurse friend after he was released from prison. (The pictures are at A.R. 387-88). His written statement said that the pictures were taken to document his condition and were taken the day that he was released in 2001. During cross examination Awlime affirmed the truth of that statement. He was then asked why the pictures showed a calendar with a 2003 date. After some non-responsive answers, he explained that the picture was not taken in 2001, but “was taken to be kept as a souvenir in 2003,” so that his kids could see some day what was done to him. He affirmed that he put on bandages and got something to look like blood so that his kids could see what had happened to him in 2001.
The IJ denied relief, primarily because of the problem with the photograph. The IJ noted the abysmal conditions in Togo, but found that the staged photograph undermined the entire credibility of Awlime’s testimony. The IJ also found that there was no reason to think that Awlime would be tortured in Togo, although the country report indicated, in the IJ’s words, that “the authorities in [Togo] tend to use some degree of severe mistreatment with many members of the country or citizens of that country for apparently a variety of reasons.”
The BIA affirmed, finding that the IJ’s adverse credibility finding was not clearly erroneous. The BIA noted Awlime’s contradictory testimony regarding the date of his second arrest, the length of detention, and the date of release. The BIA also noted the confusion about whether the three “coffees” occurred on one day or three different days, and finally noted the discrepancy caused by the appearance of a 2003 calendar in the photographs that Awl-ime originally said had been taken in 2001. The BIA also found nothing in the record to support a finding that Awlime faced a probability of torture in Togo. Awlime filed a timely, counseled petition for review.
An adverse credibility finding is reviewed under the substantial evidence test, *295 and must be upheld unless “any reasonable adjudicator would be compelled to conclude to the contrary.” Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under the applicable law,[1] an adverse credibility finding cannot be supported by speculation, conjecture or minor inconsistencies, but must involve discrepancies that go to the “heart of the asylum claim.” Kaita, 522 F.3d at 296.
The record does not compel us to conclude that Awlime was credible. Some of the discrepancies noted by the BIA could be characterized as minor. The IJ did not seem to be troubled by Awlime’s testimony that he was arrested September 1, 2001 and released September 27, 2001, which differs by a few days from his asylum application, which gives the dates as September 3, 2001 and October 3, 2001. And as Awlime argued in his brief to the BIA, the confusion about whether the “coffees” occurred on one day or over three days is also perhaps explainable “as a consequence of the trauma the Respondent suffered.” Awlime argued that victims of persecution often have difficulties remembering dates.
Nonetheless, we find that the foregoing inconsistencies, considered in conjunction with Awlime’s changing story about the photographs, support the IJ’s adverse credibility finding. Awlime was specifically asked to confirm that the photos were taken the day after he was released from prison, and he agreed. It is only when he was confronted with the fact that the calendar in the pictures was a 2003 calendar that he changed his story. The IJ was rightly disturbed by this staged photograph, and it properly formed the basis of an adverse credibility finding, as it went to the heart of Awlime’s claim. As the adverse credibility finding is supported by substantial evidence, the BIA properly dismissed Awlime’s appeal from the IJ’s denial of asylum and withholding of removal.[2] We will thus deny the petition for review.

. Because Awlime’s petition was filed before May 11, 2005, the REAL ID Act provisions regarding credibility do not apply. Kaita v. Attorney General, 522 F.3d 288, 296 (3d Cir.2008).

. Further, because Awlime's claim for relief under the CAT was based on the same testimony that was found to be incredible, the BIA properly found that nothing in the record reflected that Awlime would be tortured if returned to Togo.